IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

2010 JUN -9 AM 10: 50

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 109-127 |
| | ) | |
| MORGAN CHASE WOODS | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

The government has charged Defendant, Morgan Chase Woods ("Defendant"), with one count of receipt of child pornography, in violation 18 U.S.C. § 2252A(a)(2) ("Count 1"), and two counts of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) ("Count 2" and "Count 3"). (See doc. no. 1, pp. 1-2.) The indictment also includes, pursuant to 18 U.S.C. § 2253(a)(3), a forfeiture allegation for the return of the property used in committing the charged offenses. (See id. at 3.) Defendant has now moved to dismiss the indictment on several grounds. (Doc. no. 82.) Specifically, Defendant alleges that (1) the statutes he is charged under are unconstitutionally vague and overbroad; (2) the penalty for receipt of child pornography constitutes cruel and unusual punishment; (3) the indictment is unconstitutionally vague; and (4) the indictment violates the Double Jeopardy Clause and is multiplicitous. (See generally id.) The government contends that Defendant's arguments are without merit and provide no basis for dismissal of the indictment. (See generally doc. no. 86.) The Court held a hearing on the matter on May 11, 2010, at which time it heard arguments from the parties and testimony from Special Agent Timothy R. Picard ("S.A. Picard") of the Naval Criminal Investigative Service ("NCIS"). (See doc. nos. 90, 91.)

For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the prior motions to dismiss the indictment be treated as **NULLITIES** (doc. nos. 44, 56) and that the instant motion to dismiss be **DENIED** (doc. no. 82).

## I. BACKGROUND

### A. Factual and Procedural History

In framing the issues presented by the instant motion, a brief factual and procedural history of this case will be helpful. As noted above, on August 5, 2009, a grand jury sitting in the Southern District of Georgia issued an indictment charging Defendant with one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) ("the receipt statute"), and two counts of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(b) ("the possession statute"). (Doc. no. 1.) The indictment also includes an allegation for forfeiture of the property used to commit the charged offenses, such property to include "Defendant's computers previously seized by law enforcement on or about May 12, 2009." (Id. at 3.)

The receipt statute makes it a crime for a person to "knowingly receive[] or distribute[] any child pornography [or any material that contains child pornography] that has been mailed, or using any means or facility of interstate or foreign commerce[,] shipped or transported in or affecting interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(2). Furthermore, the possession statute makes it a crime for a person to

> knowingly possess[] . . . any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means

2

or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including a computer . . . .

Id. § 2252A(a)(5)(b). Finally, 18 U.S.C. § 2253(a) provides that any person who is convicted of an offense described in § 2252A (among other statutes) "shall forfeit to the United States . . . any property, real or personal, used or intended to be used to commit or to promote the commission of such offense and any property traceable to such property."

While Mr. Benjamin H. Brewton was originally appointed to represent Defendant in this case, Defendant later retained new counsel, Mr. Richard H. Goolsby. (See doc. no. 38.) Several of Defendant's pre-trial motions detailed, *inter alia*, the difficulties Defendant had encountered in obtaining certain discovery materials from the government, specifically those images on which the government would rely to prove each count of the indictment. (See doc. nos. 48, 49.) The government later filed a notice with the Court stating that it had provided to Defendant two lists, albeit incomplete ones, of the files it might rely on to prove the charges in this case. (See doc. no. 61.) When Defendant notified the Court approximately two weeks later that the government had yet to identify the specific images it intended to rely on at trial (doc. no. 67, pp. 1-2), the Court specifically directed the government to identify "the specific images that it intends to prove at trial constitute contraband" by February 1, 2010 (doc. no. 68, p. 2).

Defendant acknowledges that he has received this list (see doc. no. 82, p. 14), and in light of these developments, the Court directed Defendant to, if still appropriate, re-file, *inter alia*, his previous motions to dismiss (which had requested dismissal of the indictment based on several of the same grounds presented in the instant motion to dismiss) to make "his

arguments based on the current state of this case" (doc. no. 79, p. 5). The Court informed Defendant that upon the filing of his renewed motion(s), the prior motions would be treated as nullities and that the Court would only address the issues raised in the renewed motion(s). (Id.) Defendant timely filed the instant motion to dismiss, to which the government has responded. Accordingly, the prior motions to dismiss should be treated as **NULLITIES** (doc. nos. 44, 56), and the Court will address only those arguments raised in the instant motion to dismiss.

**B.      May 11, 2010 Hearing**

Before doing so, however, the Court notes that as part of his argument that the indictment in this case is unconstitutionally vague, Defendant contends that the specific images he is charged with receiving and possessing have changed since the indictment was issued. (Doc. no. 82, p. 16.) While Defendant cites no evidence or other discovery material in his motion to dismiss in support of this contention, given the serious nature of this allegation, the Court scheduled oral arguments on the motion to dismiss on May 11, 2010. (See doc. no. 91.) During the course of the May 11th hearing, it became apparent that in contending that the list of images had changed, Defendant was relying on an Examiner's Note written during the course of the forensic examination of one of the subject computers that had referred to certain "original agent selections" as "not acceptable." Thus, it became apparent that additional testimony from S.A. Picard of the NCIS would be helpful in explaining Defendant's allegation that the images had changed since the issuance of the indictment.

S.A. Picard testified that he has been with the NCIS for over 20 years and is currently the supervisor of the General Crime Squad, as he was in August 2009, when the above-

referenced note was written.[1]  S.A. Picard testified that as part of his duties, he supervises other NCIS agents, including Special Agent Mary Beth Eversman ("S.A Eversman"), the original case agent, with respect to her work on this case.  S.A. Picard further testified that he continued to supervise the case when it was re-assigned to Special Agent Noah Williams ("S.A. Williams"), following S.A. Eversman's transfer to Naples, Italy.

With respect to the procedure followed by NCIS and the Defense Computer Forensic Laboratory ("DCFL") in child pornography cases involving suspect images located on a computer, S.A. Picard testified that once the computer is seized, it is sent to DCFL, where a forensic examiner makes a "mirror image" of the hard drive.  The DCFL examiner then extracts all suspect movie and picture files from the computer and downloads them onto an external hard drive, which is then sent back to the case agent.  A review of the external hard drive will tell the case agent whether any of the images contained on the external hard drive have been identified by the National Center for Missing and Exploited Children ("NCMEC") as images depicting a known victim of child pornography.  As explained by S.A. Picard, case agents are able to determine that an image found on a particular computer depicts a known child pornography victim because the hash value, or "fingerprint," of the image will match the hash value of an image contained in the NCMEC database.  Upon review of the images on the external hard drive, the case agent selects some of those images for further in-depth analysis by DCFL to determine how the images arrived on the computer.  Notably, according to S.A. Picard, DCFL has specific guidelines about the number and types of images that are

_____

[1]Although a transcript of the May 11, 2010 hearing has not been prepared, the Court was able to review the proceedings on the Court's recording system, For the Record ("FTR").

appropriate for this more extensive analysis. Specifically, S.A. Picard testified that DCFL limits the number of images that agents may submit for further analysis to twenty images (due to the length of time it takes to conduct such an analysis) and that the preference is for NCMEC images. Furthermore, DCFL prefers that images located on physical files (as opposed to logical files) be submitted for the more in-depth analysis because more information regarding how images arrived on the computer is available from physical files.

With respect to this particular case, S.A. Picard recalled, based on his position as supervisor, that before S.A. Eversman was transferred and before the indictment was issued on August 5, 2009, S.A. Eversman received several hundred images on an external hard drive sent from DCFL, which contained 160 images and 16 movie files depicting known victims of child pornography. She then sent approximately 40 images back to DCFL for further in-depth analysis. On August 21, 2009, after the case had been transferred to S.A. Williams and after the indictment was issued, S.A. Picard communicated with Jim Morris, a forensic examiner at DCFL, about certain problems with the images S.A. Eversman had selected for further in-depth analysis. To begin, the number of images S.A. Eversman selected exceeded DCFL's limit of twenty images. Furthermore, some of the initial selections by S.A. Eversman were not NCMEC images - i.e., images depicting children that NCMEC had identified as known victims of child pornography. Finally, some of the initial selections by S.A. Eversman were in logical files, not physical files.

After explaining these issues, Mr. Morris then discussed with S.A. Picard some possible ways to resolve them. Specifically, Mr. Morris and S.A. Picard agreed that the total number of images should be lowered to 20 and that within those 20 images, more NCMEC

images and images located in physical files (as opposed to logical files) should be selected. Those images would then be used to provide a detailed report to NCIS as to how those images arrived on the computer. This series of events was summarized in an Examiner's Note that Defendant now contends demonstrates that the list of images he is charged with receiving and possessing has changed since the indictment was issued. However, as explained by S.A. Picard, the reference to "not acceptable" images in the Examiner's Note does not mean that the original 40 files were not child pornography, but rather that they did not fit the DCFL's criteria for conducting the in-depth analysis of certain images.

With the general content of the indictment, the language of the charging statutes, and S.A. Picard's testimony in mind, the Court turns to the merits of the arguments raised in Defendant's motion to dismiss.

## II.  DISCUSSION

### A.    Statutes Not Unconstitutionally Vague

Defendant first contends that the indictment should be dismissed because the statutes that he is charged with violating are unconstitutionally vague, both facially and as applied to him, making four specific arguments in support of this contention. First, he asserts that the statutes are vague because different courts have reached different conclusions as to what it means to receive and/or possess child pornography. (Doc. no. 82, pp. 3-8.) Defendant also contends that the statutes are vague because they only require "knowing" receipt or possession and do not require intent as an element. (Id. at 10-11.) He further argues that the statutes are vague because he could not know with certainty if the images he viewed were computer-generated or real. (Id. at 8-9.) Finally, Defendant asserts a vagueness challenge

to what he terms the "safe harbor" provision set forth at 18 U.S.C. § 2252A(d), which provides affirmative defenses to the charge of possession of child pornography. (Id. at 9-10.) Before addressing these arguments, however, the Court sets forth the applicable rules for evaluating vagueness challenges.[2,3]

## 1.     Applicable Rules Explained

As recently noted by the Supreme Court, a statute is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008) (citations omitted). As summarized in Williams,

---

[2] The issue of whether the specific statutes that Defendant is charged with violating are unconstitutionally vague is an issue of first impression in the Eleventh Circuit. Accordingly, in addressing Defendant's vagueness challenges to the receipt and possession statutes, the Court will rely, in part, on the opinions of other courts that have addressed this issue. However, the Court is also guided in its analysis by the opinions of the Supreme Court, the Eleventh Circuit, and other courts within this circuit, which have addressed vagueness challenges to other statutes and have provided a general framework within which to address Defendant's vagueness challenges to the receipt and possession statutes at issue in this case.

[3] Because consideration of Defendant's arguments that the receipt and possession statutes are unconstitutionally vague as applied to him would necessarily require a consideration of the facts underlying this prosecution, such arguments are not the proper subject of a pre-trial motion to dismiss. See United States v. Ferguson, 142 F. Supp. 2d 1350, 1354 (S.D. Fla. 2000) (citations omitted). Rather, such a challenge is more appropriately brought at trial by way of a Rule 29 motion for judgment of acquittal (after the government has presented its case-in-chief or after close of all the evidence) or by submitting the issue to the jury. See United States v. Ayarza-Garcia, 819 F.2d 1043, 1048-49 (11th Cir. 1987); see also Fed. R. Crim. P. 29. Accordingly, the Court limits its analysis to Defendant's arguments that the receipt and possession statutes are unconstitutionally vague on their face. Cf. United States v. Paige, ___ F.3d ___, 2010 WL 1656120 (11th Cir. Apr. 27, 2010) (per curiam) (considering an "as applied" challenge to the possession statute as to the nexus between the defendant's conduct and interstate commerce after trial).

> What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is. Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent' - wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.

Id. at 306. (citations omitted). The Court in Williams also noted that the fact that "close cases can be envisioned" as to whether an individual has violated a statute does not make a statute vague. Id. Rather, such a problem is appropriately addressed "not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." Id. (citing In re Winship, 397 U.S. 358, 363 (1970)). Stated differently, "[s]tatutes are not . . . void for vagueness because they raise difficult questions of fact. They are void for vagueness only where they fail to articulate a definite standard." F.T.C. v. Nat'l Urological Group, Inc., 645 F. Supp. 2d 1167, 1187 (N.D. Ga. 2008) (internal quotation marks and citation omitted). With these rules in mind, the Court turns to the specific arguments raised by Defendant.

## 2. Different Court Interpretations

To begin, the Court notes that Defendant cites no case law for his proposition that different interpretations of the same statute make the statute unconstitutionally vague, and notably, "uncertainty in [a] statute is not enough for it to be unconstitutionally vague . . . ." Exxon Corp. v. Busbee, 644 F.2d 1030, 1033 (5th Cir. 1981).[4] In addition, those cases that Defendant contends have given different interpretations to the meaning of receipt or

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

possession do not in fact address what it means to receive or possess child pornography. Rather, these cases have explained what is required to establish *knowing* receipt or possession. See United States v. Kuchinski, 469 F.3d 853, 861 (9th Cir. 2006) (finding that the defendant did not *knowingly* receive or possess child pornography found in temporary internet files, which were automatically downloaded when accessing web pages, in the absence of evidence that the defendant was knowledgeable about computers, that he tried to access those temporary internet files, or that he even knew of their existence); United States v. Romm, 455 F.3d 990, 1000-01 (9th Cir. 2006) (finding that "there was sufficient evidence for the jury to conclude that [the defendant] committed the act of *knowing* possession" where the defendant "exercised control over the images" in his temporary internet files (emphasis added)); United States v. Tucker, 305 F.3d 1193, 1205 (10th Cir. 2002) (finding that given the evidence that the defendant knew his internet browser stored temporary internet files, "he *knowingly* acquired and possessed" images of child pornography "each time he intentionally sought out and viewed child pornography" on the internet (emphasis added)).[5] Thus, the cases Defendant cites in support of this particular contention are irrelevant to the argument he is attempting to make.

---

[5]The other cases cited by Defendant with respect to this particular argument all involve state statutes and thus are not relevant to this Court's analysis of whether the federal statutes that Defendant is charged with violating are unconstitutionally vague. The Court is of course aware that Defendant has also cited a case out of the Eighth Circuit in support of this particular argument. (See doc. no. 82, p. 5 (citing United States v. Stulock, 308 F.3d 922, 925 (8th Cir. 2002))). However, as this opinion only briefly mentions the district court's definition of possession of child pornography, and does not discuss in any detail whether that definition was correct, see Stulock, 308 F.3d at 925, this opinion is not relevant to the Court's analysis above.

Furthermore, Defendant's challenge regarding the different interpretations of the statutes appears to center on the varying factual circumstances under which an individual may fairly be charged with knowingly receiving or possessing child pornography. Indeed, the cases cited by Defendant in his motion recount a wide variety of factual circumstances under which an individual was charged with knowingly receiving or possessing child pornography, including cases involving individuals who simply viewed images that were saved in temporary internet files, as well as cases involving the intentional downloading and saving of child pornography.[6] (See doc. no. 82, pp. 3-8.) While differing factual circumstances may make the task of a jury more difficult in determining whether the requirements of the statutes have been met, they do not make a statute unconstitutionally vague. See Williams, 553 U.S. at 306. Indeed, "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 32 (1963). Thus, similar to Defendant's "as applied" challenges, this issue is more appropriately resolved by a jury at trial, not in a pre-trial challenge to the facial validity of the statutes. Cf. United States v. Lee, 603 F.3d 904, 918-19 (11th Cir. 2010) (noting that the facts presented *at trial* were sufficient for the jury to reasonably conclude that the defendant believed he had received child pornography in violation of § 2252A(a)(2)).

---

[6]For example, in United States v. Tucker, 305 F.3d 1193 (10th Cir. 2002), the Tenth Circuit found that because defendant knew his internet browser stored temporary internet files, "he knowingly acquired and possessed" images of child pornography "each time he intentionally sought out and viewed child pornography" on the internet. Tucker, 305 F.3d at 1205.

Finally, with respect to the receipt statute in particular, the Court also notes that those courts to address vagueness challenges to this statute have found that it is not unconstitutionally vague. Indeed, in United States v. Watzman, 486 F.3d 1004, 1009 (7th Cir. 2007), *cert. denied* 552 U.S. 1052 (2007), the Seventh Circuit found that the receipt statute defines the offense with "enough specificity to provide people of ordinary intelligence with notice of what is prohibited" and "provide[s] explicit standards to prevent arbitrary and discriminatory enforcement." United States v. Watzman, 486 F.3d 1004, 1009 (7th Cir. 2007), *cert. denied* 552 U.S. 1052 (2007) (analyzing the plain language of the receipt statute and finding that the defendant had "not established that § 2252A(a)(2) fails either the 'notice' or 'arbitrary enforcement' tests for unconstitutional vagueness."); United States v. Powers, No. 07-CR-103A, 2009 WL 2601103, at *3 (W.D.N.Y. Aug. 21, 2009) (finding the reasoning in Watzman persuasive and concluding that receipt statute was not unconstitutionally vague); United States v. Marcus, 193 F. Supp. 2d 552, 557-58 (E.D.N.Y. 2001) (finding that the receipt statute "clearly apprises individuals of the nature of the conduct proscribed"); cf. Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1310-12 (11th Cir. 2009) (finding that certain provisions of the Fair Credit Reporting Act ("FCRA") were not unconstitutionally vague on their face because the FCRA "clearly define[d]" the prohibited conduct and did not give law enforcement, courts, or juries the ability to apply the provisions in an arbitrary or discriminatory manner).

Here, the Court agrees that the receipt statute, as well as the possession statute, meet the "notice" requirement and do not encourage discriminatory or arbitrary enforcement. As noted above, the statutes at issue prohibit knowing receipt or possession of child pornography

that has traveled in interstate commerce. 18 U.S.C. §§ 2252A(a)(2) & 2252A(a)(5)(B). Notably, child pornography is defined as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture" involving a minor engaged in "sexually explicit conduct." 18 U.S.C. § 2256(8). Furthermore, "sexually explicit conduct" is specifically described as actual or simulated sexual intercourse between persons of the same or opposite sex; "bestiality; . . . masturbation; . . . sadistic or masochistic abuse; or . . . lascivious exhibition of the genitals or pubic area of any person . . . ." Id. § 2256(2)(A). The Court finds that these detailed and specific definitions give fair notice of what type of conduct is prohibited.

Furthermore, the fact that the statutes require "knowing" receipt and possession does not mean that they can be enforced in an arbitrary and discriminatory manner. Indeed, the terms "child pornography" and "sexually explicit conduct" are specifically defined, limiting the government's ability to prosecute violations of the receipt and possession statutes to cases involving images fitting those detailed definitions. In addition, the fact that the factual circumstances of each case may vary and that juries may be called upon to resolve these issues of fact does not mean that the juries can act arbitrarily in determining whether an individual has violated the receipt or possession statute. Juries are limited to the facts of each case and the definition of "knowing," which requires proof of knowledge of the facts that constitute the offense." Brown v. United States, 524 U.S. 184, 193 (1998). Accordingly, this argument fails to provide a basis for dismissing the indictment.

### 3. Scienter Requirement

Defendant has also challenged the scienter requirements of the receipt and possession statutes, which require an individual to "knowingly" receive or possess images of child pornography. Defendant contends that this scienter requirement makes the statutes unconstitutionally vague and that the statutes should instead require intentional or willful conduct "in order to prevent the statutes' unintended, ambiguous sweep over fact patterns" involving inadvertent possession of pornography or other innocent conduct. (Doc. no. 82, pp. 10-11.) Notwithstanding the fact that this argument is more properly characterized as an overbreadth challenge, and not a vagueness challenge, the Court briefly addresses it here.

To begin, "the [Supreme] Court has recognized that a scienter requirement may *mitigate* a law's vagueness, especially with respect to adequacy of the notice . . . that [the] conduct is proscribed." Village of Hoffman Estates v. Flipside, 455 U.S. 489, 499 (1982) (citations omitted) (emphasis added). Furthermore, as noted above, the term "knowingly" has a well-settled meaning, see Brown, 524 U.S. at 193, that does not call into question subjective judgments that may render a statute unconstitutionally vague, see Williams, 553 U.S. at 306. Thus, contrary to Defendant's argument, the requirement of "knowing" receipt and possession actually makes the statutes less vague, rather than contributing to any purported vagueness.

Furthermore, as was the case with Defendant's argument regarding different interpretations of the statutes, his challenge to the scienter requirement essentially takes issue with varying factual circumstances, and whether an individual *knowingly* possessed or received certain images is a question that may be resolved by a jury. See Williams, 553 U.S.

14

at 306. Indeed, in <u>Williams</u>, the Supreme Court observed,

> Whether someone held a belief or had an intent is a true-or-false determination, not a subjective judgment . . . . To be sure, it may be difficult in some cases to determine whether these clear requirements have been met. "But courts and juries every day pass upon knowledge, belief and intent - the state of men's minds - having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred."

<u>Id.</u> (quoting <u>Am. Commc'ns Ass'n v. Douds</u>, 339 U.S. 382, 411 (1950)).

If the government fails to prove beyond a reasonable doubt that an individual knowingly received and/or possessed child pornography and that he knew the sexually explicit nature of the materials and the age of the children depicted,[7] then the jury may acquit him. However, the fact that a jury may be called upon to resolve these issues is not grounds for declaring a statute unconstitutionally vague. See <u>Powers</u>, 2009 WL 2601103, at *2 (citing <u>United States v. Whorley</u>, 550 F.3d 326, 334 (4th Cir. 2008)) (finding that the need for a jury determination as to whether the defendant knowingly received child pornography did not suggest that the statute was impermissibly vague). Accordingly, this argument also fails to provide a basis for dismissing the indictment.

### 4.  Real vs. Computer-Generated Images

Defendant next argues that the receipt and possession statutes are unconstitutionally vague because it may be difficult for an individual to determine with certainty whether the images he is charged with receiving or possessing were computer-generated or real.

---

[7]See <u>United States v. Smith</u>, 459 F.3d 1276, 1287 (11th Cir. 2006) (holding that the term "knowingly" under § 2252A applies to both the nature of the material and the age of the children depicted).

However, this argument also "misapprehends the void for vagueness doctrine." United States v. Paull, 551 F.3d 516, 525 (6th Cir. 2009), *cert. denied* 130 S. Ct. 187 (2009). In Paull, the defendant, who was charged with four counts of possession of child pornography under a similar statute, namely, 18 U.S.C. § 2252, made an identical argument to the one Defendant in the present case makes. Specifically, the defendant in Paull contended that § 2252 was unconstitutionally vague because "'he lack[ed] the capacity to know whether the charged items contain actual minors' or virtual images of simulated child pornography . . . ." Id. The Sixth Circuit was unpersuaded, reasoning,

> [I]n Williams, the Supreme Court described the lower court's "error [as] . . . fundamental" because it focused on the fact that it may generate close cases and not the statute's sufficiently clear description of the prohibited conduct . . . . Paull makes the same fundamental error . . . . He does not argue that a person cannot read the statute and determine what is illegal; instead he argues that, knowing what is illegal, he cannot distinguish between the prohibited and the permitted. Such an inability to determine whether a crime has been committed "is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt."

Id. (internal citations omitted); see also United States v. Vig, 167 F.3d 443, 449 (8th Cir. 1999) ("[T]he jury . . . was in a position to draw its own independent conclusion as to whether real children were depicted."). The Sixth Circuit found the following analogy helpful: "A defendant in a drug case could use [the] same logic to argue that the drug statutes are unconstitutionally vague because he could not know at the time of purchase whether he was buying authentic cocaine." Id. at 525-26. The Court finds the Sixth Circuit's reasoning, which relied on the Supreme Court's holding in Williams, persuasive and accordingly finds that this argument by Defendant is similarly without merit. The "refuge from illegal prosecution is not the [C]onstitution but putting the government to its burden to prove that

he [received and] possessed child pornography." Id. at 526. Therefore, Defendant's argument that the receipt and possession statutes are unconstitutionally vague because it may be difficult to distinguish between prohibited and permitted images also fails to provide a basis for dismissing the indictment.

### 5. "Safe Harbor" Provision

Finally, the Court addresses Defendant's vagueness challenge to the affirmative defense to the charge of possession of child pornography.[8] Under this provision, a person charged with possession of child pornography may raise as an affirmative defense the fact that (1) he possessed less than three images of child pornography, and (2) he promptly destroyed such images or reported the matter to law enforcement, without retaining the images or allowing them to be accessed by another person. 18 U.S.C. § 2252A(d).

However, it is unclear why Defendant is challenging this affirmative defense, as he never alleges in the instant motion to dismiss that this defense is even available to him - i.e., that he inadvertently came into possession of fewer than 3 images of child pornography and that he promptly destroyed those images or reported the matter to law enforcement.[9] Rather, he appears to be asserting a challenge on behalf of other hypothetical individuals who may be charged with possession of child pornography under § 2252A and attempt to raise this affirmative defense. Indeed, in the instant motion, Defendant references a hypothetical

---

[8]Although Defendant contends that this affirmative defense applies to the charges of both receipt and possession of child pornography (see doc. no. 82, p. 8), the Eleventh Circuit has held that the defense is only applicable to the charge of possession of child pornography. See United States v. O'Keefe, 461 F.3d 1338, 1341 n.4 (11th Cir. 2006).

[9]Notably, S.A. Picard testified at the May 11th hearing that at least 160 images and 16 movie files depicting child pornography were found on one of Defendant's computers.

"innocent computer user, such as [a] village priest," who would not be able to raise this defense if he inadvertently came into possession of three or more images of child pornography. (Doc. no. 82, p. 9.) In the absence of any allegation that this affirmative defense is available to Defendant, the Court finds that he lacks standing to challenge it in this pre-trial motion. See United States v. Holm, 326 F.3d 872, 876 (7th Cir. 2003) (holding that a defendant charged under 18 U.S.C. § 2252 with possession of child pornography who had not sought to use similar affirmative defense available under that statute did not have standing to challenge the defense on behalf of other individuals).[10]

In sum, the receipt and possession statutes that Defendant is charged with violating are not unconstitutionally vague. As discussed in detail above, Defendant's concerns with the varying interpretations of the statute, the scienter requirement, and the issue of real versus computer-generated images do not render the statutes unconstitutionally vague. Finally, Defendant lacks standing to challenge the affirmative defense to the charge of possession of child pornography under § 2252A. Accordingly, these arguments fail to provide a basis for dismissing the indictment.

## B.    Statutes Not Overbroad

Defendant next contends that the indictment should be dismissed because the receipt and possession statutes are overbroad, both facially and as applied to him. Defendant specifically argues that these statutes are not "sufficiently narrowly tailored to catch child

---

[10]To the extent Defendant contends that the affirmative defense is available to him by asserting an "as applied" challenge to the possession statute, as discussed in footnote 3 above, such challenges are inappropriate at this pre-trial stage, since consideration of this argument would require consideration of the facts underlying the prosecution of this case. See Ferguson, 142 F. Supp. 2d at 1354.

predators" and that the statutes are so broad that they "improperly ensnare innocent citizens around the country who do not intentionally save or download child pornography." (Doc. no. 82, p. 12.) The government argues that Defendant's facial challenges must fail because child pornography is not protected speech and that Defendant's challenges are more properly addressed by requiring the government to prove "knowing" receipt or possession. (Doc. no. 86, pp. 6-7.) The government has the better argument.[11, 12]

In addressing these challenges, the Court begins by noting that an overbreadth challenge is one based on a statute's "possible and indirect burdens on speech." Am. Booksellers v. Webb, 919 F.2d 1493, 1499-1500 (11th Cir. 1990). As explained by the Eleventh Circuit, the overbreadth doctrine "is designed to protect 'the public from the chilling effect . . . a statute has on *protected speech*; [accordingly,] the court will strike down the statute even though the governmental entity enforced the statute against those engaged in unprotected activities.'" Weaver v. Bonner, 309 F.3d 1312, 1318-19 (11th Cir. 2002) (quoting United States v. Acheson, 195 F.3d 645, 650 (11th Cir. 1999)) (emphasis added).

---

[11]Like Defendant's vagueness challenges, his contention that the receipt and possession statutes are overbroad is also an issue of first impression in the Eleventh Circuit. Accordingly, in addressing Defendant's overbreadth challenges to these statutes, the Court will rely, in part, on the opinions of other courts that have addressed this issue. However, the Court is also guided in its analysis by the opinions of the Supreme Court and the Eleventh Circuit, which have addressed overbreadth challenges to other statutes and have provided a general framework within which to address Defendant's overbreadth challenges to the receipt and possession statutes at issue in this case.

[12]Again, like Defendant's "as applied" vagueness challenges, consideration of Defendant's arguments that the receipt and possession statutes are unconstitutionally overbroad as applied to him would necessarily require a consideration of the facts underlying this prosecution, and such arguments are not the proper subject of a pre-trial motion to dismiss. See Ferguson, 142 F. Supp. 2d at 1354. Accordingly, the Court limits its analysis to Defendant's arguments that the receipt and possession statutes are overbroad on their face.

19

Notably, however, the overbreadth doctrine is "employed . . . sparingly and only as a last resort." Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973).

Furthermore, as recently noted by the Supreme Court, certain categories of speech are not protected by the First Amendment. See United States v. Stevens, 130 S. Ct. 1577, 1584 (2010) (citations omitted). Included in these categories of unprotected speech is child pornography. New York v. Ferber, 458 U.S. 747, 763 (1982); see also Ashcroft v. Free Speech Coal., 535 U.S. 234, 245-46 (2002) (holding that the First Amendment does not protect obscenity or pornography produced with actual children); United States v. Miller, 776 F.2d 978, 980 n.4 (11th Cir. 1985) (recognizing the Supreme Court's holding in Ferber). As child pornography is not protected speech, it cannot be said that the receipt and possession statutes are facially overbroad, and Defendant's overbreadth challenge to these statutes fails as well.

## C. Receipt Statute Does Not Violate the Eighth Amendment

The Court next turns to Defendant's argument that the mandatory minimum sentence of five years of imprisonment for receipt of child pornography is excessive and violates the Eighth Amendment's prohibition on cruel and unusual punishment.[13] The Eighth

---

[13]The Court is also aware of Defendant's argument that the Federal Sentencing Guidelines ("the Guidelines") applicable to this case are excessive. (Doc. no. 82, pp. 13-14.) However, the Court declines to address this argument for two reasons. First, Defendant does not make any specific argument about the provisions applicable to his case under U.S.S.G. § 2G2.2, but generally refers the Court to the issues raised in an unpublished case out of the District of Minnesota. (Doc. no. 82, p. 14 (citing United States v. Cain, No. 08-CR-0026, 2008 WL 5382005 (D. Minn. Nov. 18, 2008)). The defendant in that case raised multiple challenges to the Guidelines, and the Court will not guess at which arguments Defendant in the instant case is attempting to raise. Furthermore, the Court is hesitant to make a recommendation on the propriety of certain provisions of the Guidelines, a matter for the

Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. As the Supreme Court has held, the Eighth Amendment "contains a narrow proportionality principle that applies to noncapital sentences." Ewing v. California, 538 U.S. 11, 20 (2003). Of course, the Court is mindful that because of Congress's "broad authority to determine the types and limits of punishments for crimes," its decisions in this regard are generally afforded "substantial deference," and accordingly, "[o]utside the context of capital punishment, there are few successful challenges to the proportionality of sentences." United States v. Johnson, 451 F.3d 1239, 1242-43 (11th Cir. 2006) (*per curiam*) (citing United States v. Raad, 406 F.3d 1322, 1323 (11th Cir. 2005) (*per curiam*)). In any event, in evaluating a challenge to the proportionality of a sentence, the burden is on the defendant to make a threshold showing that the sentence is "grossly disproportionate to the offense committed." Id. Only after this threshold showing is made must the Court consider "the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions." Id.

Here, Defendant has not made the required threshold showing that the statutory minimum sentence of five years of imprisonment is grossly disproportionate to the offense

---

presiding District Judge at sentencing, especially at this stage of the proceedings. Indeed, this case has not even proceeded to trial, much less a verdict rendered or a Pre-Sentence Investigation Report prepared. Only at that point would the issue of the propriety of certain provisions of the Guidelines need to be addressed. Accordingly, Defendant's challenge to the Guidelines is premature, at best. See United States v. Witherspoon, 51 F.3d 1041 (5th Cir. 1995) (Table) (noting with approval district court's decision to reject as premature a challenge to the Guidelines raised in a motion to dismiss the indictment). For these reasons, the Court declines address this argument further.

of receipt of child pornography, given the nature of the offense, and as recognized by Congress, the type of harm child pornography can result in. Indeed, in passing the Child Pornography Prevention Act, Congress recognized two distinct harms flowing from the use of children in sexually explicit material: first, the immediate and continuing harm, both physical and psychological, to the children used in creating child pornography, and second, the harmful use of child pornography by pedophiles and sexual abusers to further their sexual habits and to "desensitize the viewer to the pathology of sexual abuse or exploitation of children." Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-26 (1996). Given these findings and the deference afforded to Congress's decisions in this regard, it cannot be said that Defendant has made the requisite threshold showing that statutory minimum sentence for receipt of child pornography is grossly disproportionate to the offense. Accordingly, the Court need not proceed to consider the sentences imposed in this jurisdiction or others, see Johnson, 451 F.3d at 1243, and this challenge by Defendant fails as well.

## D. Indictment Not Unconstitutionally Vague

Defendant also alleges that the indictment is unconstitutionally vague because it does not provide him with notice of the specific images that he is charged with receiving and possessing. (Doc. no. 82, pp. 14-15.) While Defendant acknowledges that the government has identified the specific images that it intends to rely upon at trial and thus his initial concerns about the indictment's vagueness have been "addressed and/or ameliorated," he maintains that the government has changed the list of images since the indictment was issued and may change the images at a later date or otherwise constructively amend the indictment.

22

(Id. at 14.) Accordingly, he contends that the indictment is still defective for this reason. (Id. at 15.) Defendant further argues that the forfeiture allegation is impermissibly vague, presumably because he believes that it does not give him adequate notice of what property may be seized if he is convicted of the charged offenses. (Id. at 18.) On the other hand, the government submits that the indictment is sufficient on its face and argues that any concern with the list of specific images is irrelevant to a determination regarding the sufficiency of the indictment. (Doc. no. 86, pp. 9-10.) The government further maintains that Defendant's contention that the list of specific images that it intends to rely on at trial was changed post-indictment is unfounded, specifically noting that no lists were prepared prior to the indictment and thus no change to the indictment has occurred. (Doc. no. 86, pp. 9-10.)

With those arguments in mind, the Court notes that Fed. R. Crim. P. 7(c)(1) requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." In the Eleventh Circuit, an indictment is sufficient if it: "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Walker, 490 F.3d 1282, 1296 (11th Cir. 2007) (citation omitted); see also United States v. Cole, 755 F.2d 748, 759 (11th Cir. 1985) (finding that an indictment satisfies constitutional requirements by informing a defendant of the charges against him and enabling the defendant to plead double jeopardy in case of future prosecution for the same offenses). The sufficiency of a criminal indictment is determined from its face, United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006), and "[f]acial sufficiency is not a high

hurdle." United States v. Bates, 96 F.3d 964, 970 (7th Cir. 1996). Stated otherwise, "[a]n

indictment that tracks the language of the relevant statute is sufficient, as long as it also

provides a statement of facts and circumstances that give notice of the offense to the

accused." Walker, 490 F.3d at 1296 (citation omitted); see also United States v. Silverman,

745 F.2d 1386, 1392 (11th Cir. 1984) ("The accusation must be legally sufficient, i.e., it must

assert facts which in law amount to an offense and which, if proved, would establish prima

facie the accused's commission of that offense."). Nevertheless, an indictment need not

"allege in detail the factual proof that will be relied upon to support the charges." United

States v. Crippen, 579 F.2d 340, 342 (5th Cir. 1978); see also Bates, 96 F.3d at 970

("Indictments need not exhaustively describe the facts surrounding a crime's commission nor

provide lengthy explanations of the elements of the offense.").[14]

In this case, Count 1 of the indictment alleges:

> Beginning on or about November 2006 . . . and continuing thereafter until on
> or about May 12, 2009, in Columbia County, [Defendant] . . . did knowingly
> and unlawfully receive or attempt to receive at least ten electronic images
> containing child pornography, that is images visually depicting minors,
> individuals who had not attained the age of eighteen, engaged in sexually
> explicit conduct, said images having been transported and shipped in
> interstate commerce over the Internet to Defendant's computer in Columbia
> County, Georgia, and that at the time these images were received in interstate
> commerce, [Defendant] knew they contained visual depictions of at least one
> minor engaged in sexually explicit conduct . . . .

---

[14]As other courts have explained, the government is neither required to "set forth
evidence or details of how a crime was committed," nor required to "prove its case" in an
indictment. United States v. Triumph Capital Group, Inc., 260 F. Supp.2d 444, 448 (D.
Conn. 2002) (citing United States v. Carrier, 672 F.2d 300, 303-04 (2d Cir. 1982) and
Costello v. United States, 350 U.S. 359, 363 (1956)). Accordingly, "a technically sufficient
indictment is not subject to dismissal on the basis of factual questions, the resolution of
which must await trial." Id. (internal citations and quotation marks omitted).

(Id. at 1.)

In Count Two of the indictment, the government alleges:

Beginning on or about June 24, 2007, . . . and continuing thereafter until on
or about May 12, 2009, in Columbia County, . . . [Defendant] did knowingly
and unlawfully possess more than ten electronic images containing child
pornography on his desktop computer then located at his residence in
Grovetown, Georgia, that is, images that visually depicted at least one minor,
an individual who had not yet attained the age of eighteen, engaged in
sexually explicit conduct, said images having traveled in interstate commerce
and that were produced using materials that were transported and shipped in
interstate commerce, and at the time Defendant possessed said images,
Defendant knew that each image contained visual depictions of at least one
minor engaged in sexually explicit conduct . . . .

(Id. at 2.)

Count Three alleges:

Beginning on or about June 2005 . . . and continuing until on or about
December 2007, in Columbia County, . . . [Defendant] did knowingly and
unlawfully possess more than ten electronic images containing child
pornography on his Hewlett Packard Pavilion a1020n, serial number
CNH51601T1 computer, that is images that visually depicted at least one
minor, an individual who had not yet attained the age of eighteen engaged in
sexually explicit conduct, said images having traveled in interstate commerce
and that were produced using materials that were transported and shipped in
interstate commerce, and at the time Defendant possessed said images,
Defendant knew that each image contained visual depictions of at least one
minor engaged in sexually explicit conduct . . . .

(Id. at 2-3.)

Finally, the forfeiture allegation states,

Upon conviction of the offense alleged in either Count 1, 2 or 3 of this
Indictment, [Defendant] shall forfeit to the United States . . . any property,
real or personal, used or intended to be used to commit or to promote the
commission of such offense or any property traceable to such property,

including but not limited to, Defendant's computers previously seized by law enforcement on or about May 12, 2009.

(Id. at 3.)

The Court has compared the language of the statutes criminalizing receipt and possession of child pornography under § 2252A to the language of the charged counts of the indictment and finds that each count sufficiently tracks the statutory language. The Court further finds that the language of the forfeiture allegation sufficiently tracks the language of § 2253(a)(3). In addition, the Court finds that the indictment gives Defendant fair notice of the facts and circumstances of each offense charged. Indeed, each count of the indictment sets forth a threshold number of images that Defendant is charged with receiving or possessing ("at least ten" or "more than ten"), where he allegedly received or possessed those images, and the dates on which he allegedly received or possessed them. For these reasons, the Court further finds that the indictment, as stated, would enable Defendant to raise the issue of double jeopardy if he were ever charged with the same offenses in the future.[15] The Court also notes that the forfeiture allegation sufficiently notifies Defendant which items of property will be seized if he is convicted on one or more of the charged offenses. To the

---

[15]It is also worth noting that any concern that Defendant could be charged with receiving and possessing the same images in the future is negated by the fact that, as explained by S.A. Picard at the May 11th hearing, the NCMEC maintains a database of images depicting known victims of child pornography, and each image has a unique hash value or "fingerprint." Indeed, if Defendant were charged with receiving or possessing child pornography in the future, a search of the NCMEC database would reveal whether those images were the same as those that Defendant is charged with receiving and possessing in the instant case. Accordingly, these hash values provide an additional protection against Defendant being prosecuted for receiving or possessing the same images in the future.

extent Defendant contends that he does not know which computers have been seized, the Court finds such a contention incredible.

Furthermore, the Court is unpersuaded by Defendant's argument that the indictment is impermissibly vague because the description of the number of images varies between Count 1 and Counts 2 and 3, because different dates are listed in each count, and different degrees of specificity are used to describe the subject computers in each count. (See doc. no. 82, pp. 16-17.) Rather, the Court finds that these varying numbers, dates, and descriptions of computers should alert Defendant to the fact that he is being charged with separate conduct in each count of the indictment. In sum, the Court finds that the indictment is sufficient on its face and should not be dismissed.

While the Court's analysis need not go any further since the indictment is sufficient on its face, given the issues discussed above with respect to the specific images Defendant is charged with receiving and possessing, the Court briefly discusses those issues here. Contrary to Defendant's assertion, the government is not required to list in the indictment the specific images that Defendant is charged with receiving and possessing. See Sharpe, 438 F.3d at 1263 n.3 ("It is not necessary for an indictment . . . to allege in detail the factual proof that will be relied upon to support the charges."); Wall v. United States, No. 06-CR-400, 2008 WL 3049948, at *5 (N.D.N.Y. Aug. 1, 2008) (noting that indictment charging possession of child pornography in violation of § 2252A(5)(b) "did not need to list all of the images at issue" where the indictment tracked the statutory language and provided an approximate date and place of possession). Notably, Defendant has cited no case law that

supports a contrary conclusion.[16] Nevertheless, Defendant admits that the government has provided him with a list of specific images that it intends to rely on at trial, and thus, his initial concern that he has not been provided a list of the images that he is charged with receiving and possessing has been resolved. (See doc. no. 82, p. 14); see also United States v. Ockenfels, No. 05-00067, 2006 WL 2621632, at *1 (N.D. Cal. Sept. 12, 2006) (refusing to dismiss count of the indictment charging possession of child pornography under § 2252(a)(4)(B) where the count contained the elements of the crime and covered a specific time period and where the government provided the defendant "access to a list of each image of child pornography it intends to introduce at trial").

To the extent Defendant contends that the images he is charged with receiving and possessing may change in the future, the Court will not recommend dismissal of the indictment on the basis of events that have not occurred. Notably, when the Court directed the government to provide Defendant with a list of specific images it intended to rely on at trial, it also directed the government to file a motion if it sought to change that list. (See doc. no. 68, p. 2.) No such motion has been filed, and Defendant has presented nothing to suppose that the government will change the list without first seeking the Court's permission. If the government does file such a motion, Defendant will of course have the opportunity to respond and argue why the government should not be allowed to change the list of images.

---

[16]While Defendant does cite the case of United States v. Cain, No. 08-CR-0026, 2008 WL 5382005 (D. Minn. Nov. 18, 2008), as an example of a case where specific computer files were listed in the indictment, nothing in that case establishes that the government *must* list in the indictment the specific images of child pornography that an individual is charged with possessing or receiving.

However, the Court will not recommend dismissal of the indictment on the basis of this hypothetical series of events.

Finally, with respect to Defendant's concern that the list of images has changed since the indictment was issued, as noted above, Defendant fails to cite any evidence, transcript, or any document in the record in support of this broad and conclusory allegation. However, the arguments of the parties and the testimony of S.A. Picard at the May 11th hearing revealed that Defendant is concerned with an Examiner's Note recounting a conversation between S.A. Picard and a DCFL examiner regarding a set of images selected by S.A. Eversman for further forensic analysis by DCFL. In this Note, the DCFL examiner described a conversation with S.A. Picard and included a reference to the fact that S.A. Eversman's initial selections were "not acceptable." However, as explained in detail by S.A. Picard, this phrase did not mean that the images selected by S.A. Eversman for further analysis were not child pornography. Rather, this phrase referred to the fact that the images selected did not meet the criteria DCFL requires for conducting its in-depth forensic analysis. Specifically, DCFL limits its in-depth analysis in each case to 20 images, with a preference for NCMEC images and images contained on physical, as opposed to logical, files. However, S.A. Eversman initially selected 40 images, many of which were not NCMEC images and not located on the physical files.

Accordingly, the Court finds that the reference to "not acceptable" images as contained in the Examiner's Note did not mean that the images initially selected by S.A. Eversman were not child pornography, nor that the images Defendant is charged with receiving or possessing were changed after the indictment was issued. Rather, this phrase

references the fact that the number of images would need to be reduced and the types of images would need to be changed for purposes of the in-depth forensic analysis performed by DCFL. Furthermore, there is nothing to suggest that the images the government intends to rely on at trial changed simply because the images selected for the in-depth forensic analysis changed. Notably, Defendant has identified no other materials in support of his allegation that the list of images he is charged with receiving and possessing has changed since the indictment was issued. Accordingly, the Court finds that this argument by Defendant is without merit.

In sum, the indictment is sufficient on its face, and Defendant's concern that the specific images he is charged with receiving and possessing are not listed in the indictment is irrelevant to a determination regarding the sufficiency of the indictment. Nor does Defendant's argument that the list of images may change in the future provide a valid reason for dismissal. Finally, the testimony at the May 11th hearing demonstrates that Defendant's allegation that the list of images has changed since the indictment was issued is without merit. Therefore, Defendant's argument that the indictment is unconstitutionally vague fails.

### E.    Indictment Does Not Violate Double Jeopardy and Is Not Multiplicitous

Defendant next contends that the indictment violates the Double Jeopardy Clause because it charges both receipt and possession of child pornography and therefore "seeks to unfairly punish Defendant twice, (or thrice), for the same conduct . . . ." (Doc. no. 82, p. 19.) Similarly, Defendant argues that the indictment is "unfairly multiplicitous" because it charges possession of child pornography in both Count 2 and Count 3, and because Count 1 charges Defendant with the same conduct as alleged in Count 2 and Count 3. (Id.) In response, the

government argues that the indictment does not violate the Double Jeopardy Clause and is not multiplicitous because proof of each count involves images received on different dates and on "distinct computer media." (Doc. no. 86, p. 11.) The government has the better argument.

The Fifth Amendment's Double Jeopardy Clause generally prohibits multiple punishments for the same offense. United States v. Bobb, 577 F.3d 1366, 1371 (11th Cir. 2009). Furthermore, "[a]n indictment is [impermissibly] multiplicitous if it charges a single offense in more than one count." United States v. Sirang, 70 F.3d 588, 595 (11th Cir. 1995). "In order to avoid multiplicity, only one fact or element need be different between each charge." United States v. Costa, 947 F.2d 919, 926 (11th Cir. 1991) (citing Blockburger v. United States, 284 U.S. 299, 304 (1932)).

Because a multiplicitous indictment involves double jeopardy issues, multiplicity and double jeopardy challenges are typically evaluated under the same standards. Indeed, as the Eleventh Circuit has recently held, "A multiplicitous indictment violates double jeopardy principles by giving the jury more than one opportunity to convict the defendant for the same offense." United States v. Jones, 601 F.3d 1247, 1258 (11th Cir. 2010). Accordingly, the test enunciated in Blockburger used to evaluate double jeopardy challenges and described below, is also used "to determine whether an indictment is multiplicitous, verifying that each count requires an element of proof that the other counts do not require." United States v. Williams, 527 F.3d 1235, 1241 (11th Cir. 2008). In sum, the same analysis applies to Defendant's double jeopardy and multiplicity challenges, and the Court addresses these challenges together.

31

Under Blockburger, the test to be applied to determine whether two statutory provisions prohibiting the same conduct violate the Double Jeopardy Clause, or whether each count of the indictment may result in a conviction for the same offense, is "whether each provision [or count] requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304. Under this test, the focus is on the proof necessary to establish the statutory elements of the offense, not the actual evidence presented at trial. Illinois v. Vitale, 447 U.S. 410, 416 (1980). Thus, as to Defendant's double jeopardy challenge, if "each statute requires proof of an additional fact which the other does not . . . , the offenses are not the same under the Blockburger test." Id. (internal quotation marks and citations omitted). Similarly, with respect to the multiplicity challenge, as the former Fifth Circuit explained, "To determine whether separate offenses may be carved out of a separate incident, the offenses should be examined to see whether each requires proof of a fact that the other does not." United States v. Chrane, 529 F.2d 1236, 1238 (5th Cir. 1976).

In United States v. Bobb, 577 F.3d 1366 (11th Cir. 2009), the Eleventh Circuit recently addressed whether convictions for both receipt and possession of child pornography under § 2252A violate the Double Jeopardy Clause. In doing so, the Eleventh Circuit acknowledged that "'federal statutes criminalizing the receipt of contraband [generally] require a knowing acceptance or taking of possession of the prohibited item.'" Bobb, 577 F.3d at 1372 (quoting Romm, 455 F.3d at 1001). Thus, the statutes proscribing both receipt and possession of child pornography prohibit the same conduct because "if a person takes 'receipt' of a thing, they necessarily must 'possess' the thing."[17] Id. at 1373. The appellate court further found, after

_____

[18]The Eleventh Circuit acknowledged that the converse is not necessarily true. Indeed, "a person can 'possess' child pornography without taking 'receipt' of it . . . because

32

a review of the statutory text and the relevant legislative history, that Congress did not intend "to impose multiplicitous punishment for 'receipt' and 'possession' of child pornography." Id. at 1374 (citations omitted). Thus, the Eleventh Circuit held that the possession of child pornography is a lesser-included offense of receipt of child pornography under 18 U.S.C. § 2252A and that a conviction for both offenses based on the same conduct violates the Double Jeopardy Clause. Id. at 1374-75 (citations omitted).

That said, the Eleventh Circuit found in Bobb that the defendant's convictions for both receipt and possession of child pornography did not violate the Double Jeopardy Clause because his convictions were "based on two distinct offenses, occurring on two different dates, and proscribed by two different statutes." Bobb, 577 F.3d at 1375; see also United States v. Overton, 573 F.3d 679, 697-98 (9th Cir. 2009) (finding that conviction for receipt and possession of child pornography did not violate the Double Jeopardy Clause because the convictions were based on separate conduct); United States v. Polouizzi, 564 F.3d 142, 158-59 (2d Cir. 2009) (holding that the Double Jeopardy Clause did not bar *charging* the defendant with both receipt and possession of child pornography where the defendant was charged with possessing a set of files that did not "form the basis for a separate receipt count"); United States v. Wendehake, No. 06-14040-CR, 2006 WL 3498911, at *2 (S.D. Fla. Dec. 4, 2006) ("Defendant can be charged with separate offenses of receiving child pornography and possessing child pornography, as long as he is not being charged with receiving and possessing the same images in both counts of the indictment." (citations omitted)).

---

a person can create the pornography himself." Bobb, 577 F.3d at 1373 n.15.

A similar situation is present here. This case has not yet proceeded to trial, and thus, Defendant has not been convicted of both receipt and possession of child pornography. Rather, as noted above, Defendant's concern is that the indictment violates the Double Jeopardy Clause because, as he contends, it charges him with the same conduct in all three counts. Here, Count 1 of the indictment charges Defendant with receipt of child pornography from on or about November 2006 through May 2009. (Doc. no. 1, p. 1.) Count 2 charges Defendant with possession of child pornography during a different time period, namely from June 24, 2007, through May 12, 2009. (Id. at 2.) Finally, Count 3 charges Defendant with possession of images of child pornography on a different computer during yet another time period, from June 2005 through December 2007. (Id. at 2-3.) Simply put, the different locations and different dates charged in each count of the indictment indicate that Defendant is being charged with receiving and possessing child separate images of child pornography. For these reasons, Defendant's double jeopardy argument also fails to provide a basis for dismissing the indictment.

Similarly, with respect to the multiplicity challenge, a plain reading of the indictment supports the government's contention that it must establish separate elements to meet its burden of proof on each count charged in the indictment. Furthermore, as detailed above, Defendant admits that the government has provided him with a list of the specific images it intends to rely on to prove each count of the indictment. Notably, when questioned about this issue at the May 11th hearing, defense counsel could not definitively state that the list of images the government has provided overlap with respect to each count of the indictment. In

sum, Defendant's argument that the indictment is multiplicitous is without merit, and this argument also fails to provide a basis for dismissal.

### III.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the prior motions to dismiss the indictment be treated as **NULLITIES** (doc. nos. 44, 56) and that Defendant's renewed motion to dismiss be **DENIED** (doc. no. 82).

SO REPORTED and RECOMMENDED this 7th day of June, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE